CAPITAL CASE
IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

| | | |
|---|---|---|
| LISA MONTGOMERY, | ) | |
| | ) | |
| Movant – Appellant, | ) | NO. 17-1716 |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT WESTERN DISTRICT |
| United States, | ) | OF MISSOURI, |
| | ) | |
| Respondent – Appellee. | ) | NO. 12-08001-CV-W-GAF |

**UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE APPLICATION FOR CERTIFICATE OF APPEALABILITY**
**(Second Request)**

Lisa Montgomery, by and through counsel, moves this Court for an extension of time in which to file her application for a certificate of appealability ("COA") in this capital case. Undersigned counsel has communicated with opposing counsel, Jeffery Valenti, Assistant United States Attorney, who states that the Government has no opposition to this motion. In support of her motion, Mrs. Montgomery states the following:

1. Mrs. Montgomery is serving a sentence of death pursuant to the judgment of the United States District Court for the Western District of Missouri.

2. In the lower court Mrs. Montgomery sought relief from her capital conviction and sentence by filing a "Motion for Collateral Relief to Vacate, Set Aside, or Correct Sentence and For New Trial" pursuant to 28 U.S.C. § 2255. DCD 71. The Motion raises numerous claims of constitutional error, including serious

and detailed claims of ineffective assistance of counsel. The motion itself is 238 pages and is supported by voluminous exhibits.

3. Subsequent to the filing of the motion, the district court granted an evidentiary hearing on some, though not all, of Mrs. Montgomery's claims. DCD 173.

4. The evidentiary hearing in this matter lasted 9 days –from October 31, 2016 to November 10, 2016. The transcript of the hearing is 2381 pages, of which only 106 are argument of counsel. The proof includes testimony from 39 witnesses, 18 of whom are experts. In addition to the live testimony, there are 454 supporting exhibits which encompass 6,868 pages and include the sworn written testimony of 83 witnesses. EH Tr. Vol. 1, pp. 12-44 (exhibit list). The proof centers on interrelated claims of constitutionally ineffective counsel,[1] evidence that Mrs. Montgomery was incompetent to proceed at trial, that evidence of Mrs. Montgomery's brain damage was erroneously excluded at trial, and other claims of serious constitutional error. This is a complex case.

5. In addition to the claims upon which the Court granted Mrs. Montgomery an evidentiary hearing, Mrs. Montgomery will also seek a COA on numerous claims of constitutional error arising from the unusual removal of learned

[1] Mrs. Montgomery was represented by a revolving door of a total of 8 different lawyers (Ron Wurtz, Charles Dedmon, Anita Burns, Susan Hunt, David Owen, Judy Clarke, John O'Connor, and Fred Duchardt). Each lawyer brought new investigators to the team (Ron Ninemire, Lisa Rickert, Phil Thompson, Holly Jackson, Deb Garvey, Dani Waller, and Tom Moss). The actions (and inaction) of each is relevant to Mrs. Montgomery's claim that she received constitutionally ineffective counsel at trial.

counsel, Judy Clarke, without notice to Mrs. Montgomery or Ms. Clarke, during an unrecorded, *ex parte*, in chambers conference with the district court judge and the local federal public defender.

6. The COA in this case is currently due August 3, 2017. Despite diligent efforts, undersigned counsel represent to this Court that they simply cannot complete the final application for COA within the time allotted and sincerely believe that they require an additional 90 days.

7. The COA application in this case is more complicated than the typical § 2255 appeal and more akin to an appeal in a complex civil or criminal trial. For example, in this very case, the opening brief in the direct appeal was not filed until 11 months after the notice of appeal was filed and 7 months after the transcript was complete. *United States v. Montgomery*, No. 08-1780. The defense proof in the criminal trial takes up 324 pages of the first phase transcript and 241 pages of the penalty phase transcript. The defense presented 49 exhibits in the first phase of the trial and 31 exhibits in the second phase. Though the total proof at trial is 2539 pages, 1206 pages of that is the government's case in chief which was largely uncontested. As shown above, the record of the 2255 proceedings is equally voluminous, if not more so, requiring counsel to distill the lengthy record so to assist the Court by presenting the issues succinctly and directly.

8. The Supreme Court has recently reiterated the "particularly important role" that habeas proceedings play in ensuring fundamental fairness in death penalty cases. *Christeson v. Roper*, __U.S.__, 135 S.Ct. 891, 893 (2015) (quoting,

*McFarland v. Scott*, 512 U.S. 849, 859 (1994)). Surely that role is amplified in proceedings under 28 U.S.C. § 2255 cases where the litigant has not had the benefit of a prior state post-conviction review of her constitutional claims.

9. The need for careful review of Mrs. Montgomery's claims is particularly acute because this is her only opportunity to litigate her ineffective assistance of counsel claims. *Massaro v. United States*, 538 U.S. 500 (2003). Under the circumstances, Mrs. Montgomery is entitled to heightened protection. "Where, as here, the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." *Martinez v. Ryan*, 566 U.S. 1, 11, (2012).

10. In *Martinez*, Justice Kennedy reminds us that the "right to the effective assistance of counsel at trial is a bedrock principle in our justice system." *Id.* at 12. In fact, "the right to counsel is the foundation for our adversary system." *Id*. The right to effective counsel in a death penalty trial is critical in protecting the Eighth Amendment rights of the defendant. For more than 40 years the Supreme Court's death penalty jurisprudence has been guided by the truism that:

> [T]he penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.

*Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S. Ct. 2978, 2991, 49 L. Ed. 2d 944 (U.S. 1976).

11. Unlike in other cases where a litigant can draw upon documents previously filed in the lower court as a template for the COA, here, the drafting must be entirely original because there are no post-hearing legal briefs. The district court issued its order without benefit of the transcript or briefs. The task of synthesizing the voluminous, complex, and interrelated proof is daunting.

12. To date counsel have completed a transcript summary (which is, itself, 600 pages), reviewed the court's order, identified claims that they believe warrant a COA, split duties amongst the lawyers to guard against duplication of effort, and have begun the process of researching and drafting the application. Even so, counsel in all good faith believe that they require an additional 90 days to complete the COA application.

13. In addition to the enormity of the task at hand, personal and professional obligations have also interfered with the completion of the COA. Ms. Nouri underwent two knee operations and subsequent physical therapy in May and June. Ms. Nouri was just cleared by her doctor on June 30. Both Ms. Henry and Ms. Harwell have a very active docket of death penalty cases and were required to be out of district on business for a total of twelve days each in May and for 6 days in June. Ms. Henry was out of the office for 3 days in May for her older son's high school graduation and for 3 days in June to accompany him to Providence, Rhode Island for college orientation activities. Moreover, a critical member of the § 2255 team, Ms. Scharlette Holdman, was diagnosed with stage four cancer in early May, 2017. Ms. Holdman was the lead mitigation specialist on the team and played a crucial role in



Appellate Case: 17-1716 Page: 5 Date Filed: 07/15/2017 Entry ID: 4557680

helping the team organize and present the evidence at the hearing and was to assist counsel in crafting the factual portion of the COA application to help the court understand the relevance of the proof at the hearing as it relates to Mrs. Montgomery's mental illness. Ms. Holdman's health quickly deteriorated and she passed away on July 12, 2017. Ms. Holdman was also a close friend of counsel. Upon learning that her death was imminent, Ms. Henry and Ms. Harwell traveled to Louisiana July 7 to say their goodbyes.

14. Ms. Henry continues to represent nearly two dozen Tennessee death row inmates in their challenge to the Tennessee lethal injection protocol. Her clients are fortunate that a seasoned Supreme Court litigator has agreed to join that team in *certiorari* proceedings before the United States Supreme Court. However, Ms. Henry will still play a role in drafting the petition for *writ of certiorari* which is due September 15, 2017.

15. All counsel have brief, previously scheduled family vacations planned for August which they would very much like to attend. Ms. Henry must also be out of state for four days in August to move her older son to his freshman dorm and for an additional three days to take her younger son to Columbia University for a program for prospective students.

16. On July 12, 2017, Ms. Henry learned that she requires eye surgery which is scheduled for September 1, 2017. She will require one week to recover at home before returning to work. Ms. Henry is scheduled to attend a meeting of all Capital Habeas Unit Supervisors and their defenders from September 11-12 as well



Appellate Case: 17-1716 Page: 6 Date Filed: 07/15/2017 Entry ID: 4557680

as the bi-annual meeting of the Defender Automation Working Group at the Defender Services Office in Washington D.C. from October 11-12.

WHEREFORE, for the all of the above-stated reasons, Mrs. Montgomery respectfully requests that her unopposed motion for an additional 90 days in which to complete her COA application be granted and the deadline adjusted to November 1, 2017.

Respectfully submitted,

LISA G. NOURI, Mo. Bar No. 32800
2526 Holmes
Kansas City, MO 64108
(816) 471-1000

KELLEY J. HENRY, Mo. Bar No. 38849
Supervisory Asst. Federal Public Defender
AMY D. HARWELL, Tn. Bar No. 18691
Asst. Federal Public Defender
OFFICE OF THE FEDERAL PUBLIC DEFENDER-
MIDDLE DISTRICT OF TENNESSEE
Capital Habeas Unit
810 Broadway Street, Suite 200
Nashville, TN 37203
(615) 736-5047

BY: /s/ *Kelley Henry*
*Attorneys for Lisa Montgomery*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2017, the above-captioned document was served electronically on Jeffery Valenti, Assistant United States Attorney representing the government in this matter, through the Court's CM/ECF filing system.

/s/ *Kelley Henry*



Appellate Case: 17-1716 Page: 7 Date Filed: 07/15/2017 Entry ID: 4557680