**CAPITAL CASE**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

| | | |
|---|---|---|
| **LISA MONTGOMERY,** | ) | |
| | ) | |
| **Movant – Appellant,** | ) | **NO. 17-1716** |
| **v.** | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT WESTERN DISTRICT** |
| **United States,** | ) | **OF MISSOURI,** |
| | ) | |
| **Respondent – Appellee.** | ) | **NO. 12-08001-CV-W-GAF** |

**MOTION TO EXPAND THE RECORD**

Mrs. Montgomery, through counsel, hereby moves this Honorable Court to permit expansion of the record on appeal to allow consideration of 4 documents necessary for a full and fair review of the issues raised. If permitted, Mrs. Montgomery would introduce the following documents on appeal:

1) A supplemental declaration of trial counsel Dave Owen;

2) The declaration of Lawrence Fox, Esq.;

3) An April 15, 2016 notice of electronic filing from CM/ECF

4) An October 14, 2016 transcript of the pre-hearing status conference.

**Procedural History:**

This is an appeal by a federal prisoner in a capital murder case under 28 U.S.C. §2255. In 2007, Mrs. Montgomery was tried, convicted, and sentenced to death for the murder of Bobbie Jo Stinnett. This Court affirmed on appeal. *U.S. v. Montgomery*, 635 F.3d 1074 (8th Cir. 2011). In 2013, Mrs. Montgomery filed a

Motion for Collateral Relief under 28 U.S.C. §2255. On December 21, 2015, the district court entered an Order denying relief as to many of Mrs. Montgomery's claims but granting an evidentiary hearing as to many others.[1] An evidentiary hearing was held starting October 31, 2016. The district court denied relief without briefing by the parties and without the benefit of a transcript. The court also denied any certificate of appealability. Mrs. Montgomery filed a notice of appeal and is filing an application for a certificate of appealability contemporaneous with this motion.

**Applicable Law:**

As this Court is well aware, "generally an appellate court cannot consider evidence that was not contained in the record below. However, this rule is not etched in stone. *When the interests of justice demand it, an appellate court may order the record of the case enlarged*." *Dakota Indust., Inc. v. Dakota Sportswear, Inc*., 988 F.2d 61, 63 (8th Cir. 1993) (emphasis added). As this Court has previously found, situations in which the "interests of justice demand' expansion of the record include the "situation in which misrepresentation, willful or otherwise, left the district court with an incomplete picture of the issues before it." *Id*.; *see also, Lankford v. Sherman*, 451 F.3d 496, 502 n.2 (8th Cir. 2006) ("the parties' motions to supplement the record are granted and the exhibits are

[1] D.E. 173

considered in this appeal") (citing *Dakota*); *Miller v. Benson*, 51 F.3d 166, 168 (8th Cir. 1995) ("interests of justice require that we enlarge the record and consider evidence not contained in the record below" where the evidence "would have been helpful to the district court") (citing *Dakota*); *United States v. Pugh*, 75 Fed. Appx. 546, 547 (8th Cir. 2003) ("The government now moves to supplement the record on appeal: after obtaining the writ [of garnishment for restitution], the government learned that Pugh and others had made partial restitution payments . . . directly to the victim . . . Because the district court had an incomplete picture of Pugh's restitution debt, we grant the government's motion to supplement") (citing *Dakota*); *Turk v. United States*, 429 F.2d 1327, 1329 (8th Cir. 1970 ) ("In the interest of justice this court may order the record enlarged ) (cited in *Dakota*).

This Court may consider evidence outside the record where "misrepresentation, willful or otherwise, left the district court with an incomplete picture." *Ortiz v. U.S.*, 664 F3d 1151. 1165 (8th Cir. 2011) (*citing Dakota Indust., Inc. supra*). While this is a "narrow exception [the Court of Appeals] exercise[s] only in extraordinary circumstances," when the district court's finding obtains an "inaccurate view" as a result of a misstatement the Court should find the exception. *Ortiz*, 663 F.3d at 1165. In *Ortiz*, this Court found that consideration of supplemental information was necessary, because the Court's "duty to search for

constitutional error with painstaking care is never more exacting than it is in a capital case." (*Id.* at 1166, *quoting Kyles v. Whitley*, 514, U.S. 419, 422 (1995)).

**Argument:**

**1) Supplemental declaration of trial counsel David Owen:**

The district court held an evidentiary hearing beginning on October 31, 2016. At the evidentiary hearing, trial counsel David Owen was asked about his knowledge of statements made to the trial investigator Dani Waller by Mrs. Montgomery's cousin, David Kidwell. Vol. 8, p. 2185, *Owen Testimony*. Mr. Owen's attention was directed to the second page of a memo from Ms. Waller to the defense team (hereafter "Kidwell Memo"). In the memo, Ms. Waller related that Mr. Kidwell told her and FPD Investigator Ron Ninemire that Mrs. Montgomery was forced to have sex with Jack (her step father) "and his friends." Exhibit 157, *Kidwell Memo*. Mr. Owen was asked whether the trial team followed up on that information.

> Q: And on the second page can you read the highlighted portion there, sir? "Jack would come home drunk with his friends and make her perform sexually with them."
>
> A: Okay
>
> Q: But the other men were not investigated isn't that fair to say?
>
> A: Could never find out who they were

Q: So that wasn't followed up on?

A: It was followed up the best we could. We went and talked to Jack Kleiner about it, and he denied it ever happened, wouldn't give us any names.

Q: And that was the extent of the follow-up?

A: As far as I know.

Vol. 8, p. 2185-86, *Owen Testimony*.

Mr. Owen has subsequently clarified that he did not intend by his testimony to mislead the court or to imply that his conversations with Jack Kleiner were in response to the information from the investigators' Kidwell Memo:

> 4. When I testified with regard to a question about follow up on Ms. Waller's 2007 memo, I was solely referencing the 2005 interviews with Jack Kleiner.
>
> 5. I testified that "we" had asked Jack Kleiner about the allegations that he had sexually assaulted Lisa. By "we" I was referring to Ron Ninemire and myself. Ron Ninemire and I interviewed Jack Kleiner two times, both of those interviews took place in 2005 which was early on in my representation of Lisa.
>
> 6. At the time Ron and I interviewed Jack Kleiner we did not know of the allegations of trafficking or gang rape.
>
> 7. When I testified that Jack denied it, what I meant was that Jack had denied he had ever abused Lisa.
>
> 8. I did not believe Jack's denials. We would not have been deterred from investigating any avenue on the basis of what Jack Kleiner said.

Attachment 1, *Supplemental Owen Declaration*.

The district court denied relief explicitly based upon a misunderstanding of Mr. Owen's testimony. The district court found, "The evidence adduced at the evidentiary hearing refuted [attorney standard of care expert witness] Bookman's opinion that counsel did not follow up on leads. In particular, Owen and Ninemire followed up with Jack Kleiner and Movant on David Kidwell's statement that she was sexually abused by Jack's friends, but neither provided any corroborating evidence." D.E. 212, p. 52. On this basis, the Court denied Mrs. Montgomery's ineffective assistance of counsel claim relating to the attorneys' failure to investigate mitigation. "Although the statement could have led to additional mitigating evidence, the team was unable to corroborate it through Jack Kleiner or Movant herself. This was objectively reasonable as trial counsel only limited the scope of the investigation after reasonable diligence to corroborate Kidwell's statement." D.E. 212, p. 49. The Court's misunderstanding of Mr. Owen's testimony was contrary to that which Mr. Owen intended to convey by his statements – and contrary to the truth of what happened: trial counsel did not strategically limit investigation after an attempt to corroborate the Kidwell Memo, rather trial counsel did nothing at all to follow up on the Memo.

Mr. Owen's supplemental declaration clarifying that, contrary to the district court's understanding, he did not follow up on the Kidwell Memo should be considered by this Court where "the interest of justice demand[s] it." *Dakota*, 988

F.2d 61, 63. Here, consideration of Mr. Owen's clarification is necessary where the district court's entire determination that counsel's mitigation investigation was reasonable hinged on a misinterpretation of Mr. Owen's testimony that is contrary to fact.[2] The finding of the district court here is precisely the "inaccurate view" this Court found to require supplement of the record in *Ortiz*. *Ortiz*, 663 F.3d at 1165.

**2) Supplemental declaration of Lawrence Fox, Esq.**

One of the issues at issue in this application for a certificate of appealability involves the district court's denial of due process to Mrs. Montgomery throughout the §2255 proceedings, including, but not limited to: refusal to reassign the case for factual development of Mrs. Montgomery's claim of infringement of her right to counsel; refusal to grant discovery, including initially granting a recorded interview with Magistrate Judge Maughmer and then acquiescing in Maughmer's request that the interview not be recorded; hostility toward habeas counsel from the first court appearance, accusing counsel of improperly alleging that the court had been misled; attempts to intimidate habeas counsel with reference to non-FPD counsel being paid "by the government" and referencing the government as her

[2] Mrs. Montgomery does not concede the proposition that it is objectively reasonable for trial counsel to limit investigation into repeated gang rapes to merely asking one of the perpetrators, "Did you do it?" The issue of whether such an aborted investigation could be reasonable is raised in the Application for Certificate of Appealability in addition to the district court's misapprehension of Mr. Owen's testimony.

"client" who was entitled to be pleased with her work; removal of appointed habeas counsel; and limitation of Mrs. Montgomery's proof at the hearing, including the exclusion of the testimony of Lawrence Fox, Esq.

Mr. Fox, a legal and ethics expert, was present at the evidentiary hearing and in court ready to testify when the government moved to exclude his testimony. Because he was in court prepared to testify, Mr. Fox witnessed the district court's hostile demeanor toward habeas counsel. Mr. Fox, whose testimony had been noticed for months, flew in from New Haven and was to be the final witness on Friday afternoon of the first week of the hearing.

The record reflects that the court had expressed anger at counsel earlier in the week (Tuesday) when counsel had run out of witnesses an hour before the close of court, having failed to anticipate that the Government would not cross-examine witnesses at any length. On Tuesday the district court excoriated counsel for running out of witnesses when the court had already had to end an hour earlier than expected on Monday due to the sudden death of Counsel Nouri's brother on Monday. Cognizant of the district court's impatience and not desiring to be scolded any further, counsel had made sure that Mr. Fox arranged his schedule to be in court so as to not run out of witnesses again. With Mr. Fox present, counsel anticipated that the testimony would consume all of the court's allotted time and

possibly require the court to work late. (The court had indicated that he would excuse Ms. Nouri early so she could attend her brother's wake).

As Mr. Fox was called to the stand, the government, for the first time – despite both a pretrial conference with counsel and a pretrial status conference with the court (see below), moved to exclude his testimony and the Court granted the motion. As a result of the exclusion of Mr. Fox's testimony, counsel had to inform the court that counsel had no additional witnesses to present in the 45 minutes remaining in the time the court had indicated it would preside. (The remaining witnesses were experts from out of town who counsel had not anticipated needing until the following week due to the full schedule for the day. Those witness' travel and hourly fees were to be paid by the federal public defender's office and counsel could not responsibly spend taxpayer money to bring experts to Kansas City to unnecessarily stay over a weekend when it was apparent that they were not going to testify). The district court became furious with habeas counsel. As Mr. Fox explains:

> I recall that Judge Fenner was markedly gruff towards Ms. Harwell. In my experience, judges usually treat all the parties and lawyers with the civility and respect to which they are entitled. In this case, though, I was struck by the court's hostility. Moreover, as a student of lawyer and judicial professional obligations, I was troubled by the broader context of the proceedings. Here was Judge Fenner deciding whether to accept or reject testimony which discussed his role in Mrs. Montgomery's original case. And his aggressive behavior made him seem—at the very least—personally invested in the issue.
>
> . . .

> As this exchange unfolded, I was upset by how the judge reprimanded Ms. Harwell and her colleague, Kelley Henry. His behavior seemed to me unreasonable and unnecessarily harsh. I was particularly surprised that Judge Fenner never questioned the timing of the government's motion to exclude my testimony. Instead, he only criticized Ms. Harwell and Ms. Henry despite the government's role in creating the delay in the first place. The day ended with the judge adjourning the hearing while habeas counsel were still attempting to argue their position.
>
> . . .
>
> A year later, the episode still troubles me.

Attachment 2, p. 6, *Fox Declaration*.

As recounted more fully in his declaration, Mr. Fox has practiced law and served as an expert witness in multiple jurisdictions and has served as the chair of the ABA Standing Committee on Ethics and Professional Responsibility and therefore is eminently qualified to opine regarding the severity of the district court's animosity toward counsel. "[T]he interest of justice demand[s]" that the record be supplemented to provide context not otherwise apparent from a cold record as this Court reviews Mrs. Montgomery's claims that the district court should have recused himself and that the district court deprived Mrs. Montgomery of procedural due process in the adjudication of her claims below. *Dakota,* 988 F.2d, at 63. This context is also needed where the district court has impugned the integrity of appointed counsel. It is clear that the district court took deep offense to the Motion to Reassign and to the fact that habeas counsel raised claims relating to the termination of Judy Clarke. The court's hostility first manifested on the record

on May 5, 2013 and continued throughout the entirety of the district court proceedings culminating with the district court's attack on the integrity of counsel in his final order. *See* D.E. 212, pps. 122-28 ("Improper Conduct by Habeas Counsel").

At the heart of one of Mrs. Montgomery's claims is the district court's abrupt removal of the only qualified lawyer from the case. The district court has expressed anger with habeas counsel for pursuing this claim, specifically and repeatedly criticizing habeas counsel for their audacity in accusing Ray Conrad and Dave Owen of misleading the court regarding Ms. Clarke's alleged abusive personality, non-productivity, and purported obstruction of the development of the defense.

The claim raised in the motion by habeas counsel is based on that which is known about an off-the-record, in chambers conference on April 20, 2006, which resulted in the district court terminating Ms. Clarke's appointment, calling CCA to bar Ms. Clarke from visiting Mrs. Montgomery, and ordering that Mrs. Montgomery not be permitted telephone contact with Ms. Clarke. To an objective outside observer, for a district court to take such drastic measures it must have received dramatic and disturbing information. A review of the record that was made in the days that followed Ms. Clarke's termination reveals that the district court judge concluded, based on what he had been told, that Ms. Clarke was

"abusive," "non productive," and "obstructive" to the defense case. No. 13-2958, Entry ID: 4072350, Attachment 4, *4/25/05 and 5/3/05 Transcript*

After reviewing this record, and trial counsel's files, which reflected the tremendous progress the defense made once Clarke joined the team, habeas counsel alleged that Conrad and Owen must have made untrue statements to the Court for it to conclude that Ms. Clarke was abusive, non-productive, and obstructive. The district court recognized that habeas counsel based the claim on the court's own language, but told counsel that those were his words – not those of Mr. Conrad and Mr. Owen. Even so, the district court's words reflect conclusions that it drew from information obtained in the *ex parte*, off-the-record meeting. The district court never met Ms. Clarke, and Mr. Owen and Mr. Conrad's words were the basis for the termination.

It is precisely because only the district court is a critical witness to how the court came to draw the conclusion that Ms. Clarke's appointment was so damaging to the defense that she must be immediately terminated and all communication with the client cut off, that habeas counsel moved to reassign the case.

That the district court excoriated habeas counsel at the first appearance after the interference with counsel claims were filed and continued to demonstrate prejudice against counsel is not apparent from the face of the written record because emotion and tone cannot be captured on a cold page. Mr. Fox's

observations are therefore necessary to contextualize the record, to demonstrate the district court's hostility toward counsel and the claims raised in the motion, and the reasons why the case should be remanded for an adjudication before a neutral court.

**3) Communique from the district court that is currently outside the record (CM/ECF Notice):**

On April 15, 2013, Counsel received an email from the district court CM/ECF notifying them of the hearing set on May 6, 2013. The notice purports to be the "official notice for this hearing: Oral Argument on Movant's Motion to Reassign Case set for 5/6/2013 01:30PM in Courtroom 8A, Kansas City (GAF) before District Judge Gary A. Fenner" (Attachment 3).

In the contemporaneously filed Application for Certificate of Appealability, Mrs. Montgomery argues that counsel was unjustly denied discovery of Judge Fenner's recollections regarding events that transpired in chambers, off-the-record that resulted in the removal of the only qualified and competent member of Mrs. Montgomery's the-existing trial team. The district court has referred to the May 6th hearing as counsel's opportunity to question Judge Fenner as to his recollection of those events.[3] Where counsel argues that a hearing presided over by the Judge

[3] D.E. 65, p. 3, *Order Supplementing Order Denying Motion to Reassign Addressing Ex Parte Conversations* ("Counsel for Movant had the opportunity to inquire of me regarding my explanation of the language they claimed as evidence of fraudulent behavior, but chose not to do so.")

counsel seeks to depose is not an opportunity to take discovery, the CM/ECF notice specifying that counsel were to appear for an "oral argument" is necessary to correct the "inaccurate view" of the district court regarding the nature of the hearing. *Ortiz*, 663 F.3d at 1165.

4) **The October 14, 2016 transcript of the pre-hearing status conference**.

On October 14, 2016 the parties met with the court at a pre-hearing status conference to resolve any outstanding issues prior to the evidentiary hearing. The parties informed the court that both were in compliance with the court's pretrial order regarding witness disclosures and exchange of witness lists as well as in agreement with regard to the stipulated testimony of the majority of Mrs. Montgomery's lay witnesses. This announcement, made in open court, is relevant to Mrs. Montgomery's reliance on the sworn declarations of her lay witnesses in support of her claims. As the district court's decision does not engage with that proof, this court must be fully informed as to the nature of the parties' agreement and Mrs. Montgomery's reasons for not presenting the testimony live.

WHEREFORE, for the all of the above-stated reasons, Mrs. Montgomery respectfully requests to expand the record to the supplemental declaration of trial counsel Dave Owen (attachment 1); the declaration of Larry Fox, Esq. (attachment 2); the April 15, 2016 notice of electronic filing from CM/ECF (attachment 3); the October 14, 2016 Transcript of the pre-hearing status conference (attachment 4).

Respectfully submitted,

LISA G. NOURI, Mo. Bar No. 32800
2526 Holmes
Kansas City, MO 64108
(816) 471-1000

KELLEY J. HENRY, Mo. Bar No. 38849
Supervisory Asst. Federal Public Defender
AMY D. HARWELL, Tn. Bar No. 18691
Asst. Federal Public Defender
OFFICE OF THE FEDERAL PUBLIC
DEFENDER-MIDDLE DISTRICT OF
TENNESSEE
Capital Habeas Unit
810 Broadway Street, Suite 200
Nashville, TN 37203
(615) 736-5047

BY: /s/ *Kelley Henry*
*Attorneys for Lisa Montgomery*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2017, the above-captioned document was served electronically on Jeffery Valenti, Assistant United States Attorney representing the government in this matter, through the Court's CM/ECF filing system.

/s/ *Kelley Henry*