**CAPITAL CASE**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

| | | |
|---|---|---|
| **LISA MONTGOMERY,** | ) | |
| | ) | |
| **Movant – Appellant,** | ) | **NO. 17-1716** |
| **v.** | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT WESTERN DISTRICT** |
| **UNITED STATES** | ) | **OF MISSOURI,** |
| | ) | |
| **Respondent – Appellee.** | ) | **NO. 12-08001-CV-W-GAF** |

# DECLARATION OF LAWRENCE J. FOX

## Introduction

I am writing to describe my observations of an evidentiary hearing that took place on Friday, November 4, 2016 in *Montgomery v. United States*. On behalf of the appellant, Lisa M. Montgomery, I had been asked to testify as an expert witness on professional responsibility and legal ethics. At the hearing, I would have testified that three of Mrs. Montgomery's trial lawyers committed serious ethical violations during the course of their representation: David Owen and Ray Conrad improperly sought to remove another lawyer, Judy Clarke, from the case without Mrs. Montgomery's knowledge or consent, and Fred Duchardt lied to the court about the defense team's preparations for trial. In taking these actions, Mr. Owen and Mr. Conrad violated their duty of candor to the court and their duty of communication to their client, and Mr. Duchardt violated his duty of candor to the court and, in the process, created a non-waivable conflict of interest.

On the day that I was scheduled to testify, the government—for the first time—moved to exclude my testimony. Judge Gary A. Fenner, who had also served as the presiding judge at Mrs. Montgomery's original trial, quickly granted the government's motion. Judge Fenner then, with palpable hostility, proceeded to criticize habeas counsel, Amy Harwell, for delaying the proceedings by not having another witness to fill the time that my testimony had been expected to take. For me, Judge Fenner's treatment of Ms. Harwell reinforces the critical importance of the old maxim, "no one should be a judge in his own case." So too, no judge should preside over a case in which his prior conduct and objectivity have become a central issue.

## Professional Background

I am a lawyer duly admitted to practice in the Supreme Court of the Commonwealth of Pennsylvania, the Appellate Division, Second Department of the Supreme Court of New York, the Supreme Court of Connecticut, the United States Supreme Court, and numerous federal circuit courts of appeal and district courts. Since 2009, I have been the George W. and Sadella D. Crawford Visiting Lecturer in Law at Yale Law School teaching legal ethics and professional responsibility. I am also the Supervising Lawyer of the Ethics Bureau at Yale, a student clinic that provides ethics advice, counseling, and support to those who cannot afford such services.

I have regularly testified about the ethics and professional responsibility of lawyers and judges in various proceedings in both state and federal courts throughout the United States. I am a former member and Chair of the ABA Standing Committee on Ethics and Professional Responsibility, a former Chair of the ABA Section of Litigation, and served as an advisor to the American Law Institute's Restatement (Third) of the Law Governing Lawyers. I am also the founder of Ethics 2000, the ABA Commission established to rewrite the Model Rules of Professional Conduct.

**Events Leading up to the Proceeding**

Ms. Harwell first contacted me about Mrs. Montgomery's case in January 2016. We knew each other from a prior federal habeas case in which I had also provided expert testimony about lawyer misconduct. Because, in Mrs. Montgomery's case, Ms. Harwell had to disclose her experts by March 28, we quickly agreed that I would serve as an expert witness. At the time, Ms. Harwell mentioned in an email that she expected no opposition from the United States, because the Assistant United States Attorneys "have given every indication they do not want to limit our record."[1]

Over the next seven months, I prepared my expert report and testimony. As I always do in these cases, I began by reviewing the underlying record, focusing on potential ethical violations. Although I have worked on many professional

[1] Email from Amy Harwell to Lawrence Fox (Feb. 5, 2016).

responsibility cases during my career, Mrs. Montgomery's capital case struck me as particularly complex, both factually and legally. I worked hard to condense my findings, but my final report was still twenty-three pages, and my testimony was expected to take more than an hour. In the end, I concluded that Mrs. Montgomery's trial counsel had committed numerous ethical violations in the course of their representation.

In addition to the conduct of the lawyers, this case was complicated by the fact that the presiding judge, Judge Fenner, had also served as the judge in Mrs. Montgomery's original trial. When I first learned this fact, I was quite surprised. Although my report and testimony focused on misconduct committed by Mrs. Montgomery's prior lawyers—Mr. Owen, Mr. Conrad, and Mr. Duchardt—these lawyers had acted under Judge Fenner's supervision and with his approval. More importantly, one of the key claims in the case was that, after an ex parte conversation with Mr. Owen and Mr. Conrad, Judge Fenner had improperly removed Mrs. Montgomery's preferred counsel, Ms. Clark, without notice to either Ms. Clark or the defendant. I would therefore be testifying before Judge Fenner about serious ethical misconduct that could have only occurred with his assent.

Although I was initially scheduled to testify on Tuesday, November 15, 2016, on Wednesday, November 2, Ms. Harwell asked if I could instead testify that upcoming Friday. Ms. Harwell explained that Judge Fenner had chastised her earlier

in the week for running out of witnesses before the end of the day, so she wanted to ensure that she would fill every hour on Friday with witness testimony. She told me that she hoped to finish my testimony by the end of Friday, but also warned that I might have to stay the weekend and return to court on Monday. In light of these concerns, I flew into town the night before the hearing to ensure that I would not be late for my testimony, scheduled for the afternoon of Friday, November 4.

**The Proceeding**

The next day, I also made sure to get to the courthouse early so that I would not delay the court. I arrived around noon and waited outside the courtroom until the afternoon break, when Ms. Harwell told me that I would be the next witness to take the stand. I sat towards the back, waiting to be called. Up to this time, neither Ms. Harwell nor I had received any indication that the government would object to my testimony. I often testify about questions of professional responsibility without opposition and was therefore surprised when the government announced its objection just as I was approaching the front of the courtroom.

A remarkably brief exchange followed. Ms. Harwell made an effort to respond to the government's motion, but Judge Fenner was adamant that he would not let me testify, not even as an offer of proof. I remember him stating, rather tersely, that he had no need to hear expert testimony about ethics and professional responsibility

issues. As the judge granted the government's motion, I simply stood in the well of the courtroom, without saying a word.

I recall that Judge Fenner was markedly gruff towards Ms. Harwell. In my experience, judges usually treat all the parties and lawyers with the civility and respect to which they are entitled. In this case, though, I was struck by the court's hostility. Moreover, as a student of lawyer and judicial professional obligations, I was troubled by the broader context of the proceedings. Here was Judge Fenner deciding whether to accept or reject testimony which discussed his role in Mrs. Montgomery's original case. And his aggressive behavior made him seem—at the very least—personally invested in the issue.

After granting the motion, Judge Fenner asked Ms. Harwell to call her next witness. Predictably, she had none, as I was the last witness that Ms. Harwell had planned to present on Friday afternoon. Judge Fenner, once again, summarily rejected any attempts by Ms. Harwell to explain the situation.

As this exchange unfolded, I was upset by how the judge reprimanded Ms. Harwell and her colleague, Kelley Henry. His behavior seemed to me unreasonable and unnecessarily harsh. I was particularly surprised that Judge Fenner never questioned the timing of the government's motion to exclude my testimony. Instead, he only criticized Ms. Harwell and Ms. Henry despite the government's role in



Appellate Case: 17-1716 Page: 6 Date Filed: 11/01/2017 Entry ID: 4596230

creating the delay in the first place. The day ended with the judge adjourning the hearing while habeas counsel were still attempting to argue their position.

## Conclusion

A year later, the episode still troubles me. Judge Fenner's behavior would have been troubling, regardless of the context. But in this case—where Judge Fenner presided over a hearing that raised questions about his role in a prior trial—his conduct was inappropriate.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 31, 2017.

Respectfully submitted,

Lawrence J. Fox
127 Wall Street
New Haven, CT 06511
(203) 432-9358